Filed 9/15/25  P. v. Garcia CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

DANIEL GARCIA,

    Defendant and Appellant.

E083546

(Super.Ct.No. RIF1802612)

OPINION

APPEAL from the Superior Court of Riverside County.  Jennifer R. Gerard, Judge.  Affirmed.

Tracy R. LeSage, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Daniel Rogers, Amanda Lloyd and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

1

I.

INTRODUCTION

Defendant and appellant Daniel Garcia appeals from the denial of his motion to vacate his plea pursuant to Penal Code[1] section 1473.7.  On appeal, defendant contends the trial court prejudicially erred in denying his motion to vacate his guilty plea because trial counsel failed to adequately advise him of the specific immigration consequences. We find defendant failed to show that he did not meaningfully understand the immigration consequences of his plea.  We thus affirm.

II.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2018, defendant assaulted and injured Jane Doe after he was convicted of violating section 273.5 in 2015.  As a result, defendant violated a protective order.

In August 2018, an information was filed, charging defendant with inflicting injury on a domestic partner resulting in a traumatic condition with a prior conviction (§ 273.5, subd. (f)(1); count 1); assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 2); and violating a protective or stay-away order (§ 166, subd. (c)(1); count 3).

In February 2020, in an open plea to the court, defendant pleaded guilty to all counts charged.  Defendant's open plea resolved five of his pending cases, including this case.

---

[1]  All future references are to the Penal Code unless otherwise stated.

Prior to pleading guilty, defendant signed a change of plea form warning him that if he was not a United States citizen, then his conviction "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." At the time he entered his plea, defendant was a citizen of Mexico and a lawful permanent resident of the United States. Defendant's court-appointed counsel certified that he believed defendant understood the consequences of the plea and joined in defendant's decision to plead guilty. Defendant also signed a separate immigration consequences addendum. The addendum stated that a conviction of an aggravated felony under federal law "*will* result in removal/deportation, exclusion, and/or denial of naturalization." It defined aggravated felony to include a crime of violence if the term of imprisonment is at least one year, a crime of moral turpitude, and a domestic violence offense. The addendum also stated that defendant had the right to ask for more time to evaluate the immigration consequences of his case and, by pleading guilty, he was indicating he knew and understood the "specific immigration consequences that will result from [his] conviction."

In relevant part, during the change of plea colloquy, the trial court asked defendant if he understood that if he was not an American citizen, then the conviction "could result in [his] deportation, denial of naturalization, or exclusion from this country?" Defendant responded, "Yes, sir." The People objected to the open plea.

On September 4, 2020, defendant was sentenced to four years in state prison with 1,796 days credit for time served and released on parole. The imposed sentence was as

3

follows: the middle term of four years for the corporal injury with a prior conviction, a concurrent middle term of three years for the aggravated assault, and 180 days in county jail for violating the protective order to run concurrently. For defendant's other pending cases, the court sentenced him to consecutive sentences for the felonies and concurrent terms for the misdemeanors for an aggregate term of six years, eight months in prison. At the time of sentencing, the victim made an impact statement. Among other statements, the victim noted that the criminal charges prevented defendant's grandsons from getting to know him "and now he's going to be deported[.]" The victim again referenced deportation, stating, "It's best that he's deported."

On July 8, 2022, defendant was taken into custody by federal immigration authorities and informed that deportation proceedings were being commenced against him because of his convictions in this case. On October 12, 2022, immigration charges were sustained against defendant, and he was ordered to be removed from the country on May 12, 2023.[2]

Defendant subsequently retained counsel, and on October 23, 2023, counsel filed a motion to vacate his conviction pursuant to section 1473.7 with supporting exhibits and a declaration from defendant. Defendant declared that at the time he entered his guilty plea, he was a Mexican citizen and a lawful permanent resident of the United States. He first entered the United States in 1981 and had lived in the country since that time. Defendant married his wife in 2021, a current United States citizen. Defendant has three

---

[2] The Board of Immigration Appeals dismissed his appeal on October 16, 2023.

children, all natural born United States citizens and all of whom currently reside in the United States. Defendant also has seven siblings living in the United States who are also United States citizens; his eighth sibling is a lawful permanent resident, also residing in the United States. Defendant had an approved I-130 petition, which is a petition for an alien relative applying for adjustment of status to that of a lawful permanent resident, from one of his children. Defendant asserted that he had worked in the construction industry for over 30 years, was a journeyman roofer, and a union member for roofers. He also claimed that his mental health history dated back years ago and that he was currently being treated for schizophrenia, generalized anxiety disorder and major depressive disorder and was on medication.

Defendant further declared that while he was in jail, he met with his appointed attorney on a few occasions outside of his court hearings and recalled briefly discussing his immigration status and how his conviction "'might'" lead to his deportation, but his counsel did not tell him anything specific about being an aggravated felon and how his conviction and sentence would affect his immigration consequences. He claimed that his counsel failed to advise him of the actual and specific immigration consequences. Defendant also declared that had he "truly understood" his convictions would "severely limit [his] options in immigration court and most certainly result in [his] deportation from this country," he would have never pleaded guilty. Instead, he "would have sought a different plea or fought [his] case, as [his] sole priority at the time was staying in this country with [his] wife and children." He asserted that he would have rejected the plea

5

offer had he known he would be deported. Defendant submitted various documents including his own declaration, birth certificates showing that his children were born in the United States, immigration records, and a letter from his doctor summarizing his mental health status. Defendant did not submit a declaration from his court-appointed counsel who had represented him during the plea.

On October 27, 2023, the People opposed the motion to vacate the conviction. The People argued that the record showed defendant meaningfully understood and knowingly accepted the actual or potential immigration consequences of his plea and that defendant had not shown any actual prejudice resulting from the plea.

Following a continuance, a hearing on defendant's motion to vacate his conviction was held on February 6, 2024. Defendant was not present as he was in immigration custody. Defendant's former attorney who had presented him during the plea also was not present. The parties submitted on their motions without presenting additional evidence or without any argument. The trial court subsequently denied defendant's section 1473.7 motion, explaining as follows: ". . . So I have reviewed the motion. I reviewed the supplemental, which did include that transcript as I previously indicated, and it's actually the Court who goes through the *Tahl*[3] form with the defendant on this matter. And it's pretty specific through all of the terms on that form, quite frankly. And then if you look at page 8 on line 16 through 20, he specifically addresses the defendant regarding the immigration admonition. Not having anything else, such as whether

---

[3] *In re Tahl* (1969) 1 Cal.3d 122.

6

counsel did or not, certainly the Court did let [defendant] know. He also had a prior 273.5, I'm not sure what charge is causing the immigration issues at this point. [¶] But I don't find that based on that particular section of that transcript that the—not having any testimony or any other evidence from his prior counsel, Mr. Carnero. At this time, the Court finds that he has not met his burden under Penal Code section 1473.7. And the Court's going to deny the motion." Defendant timely appealed.

III.

DISCUSSION

Defendant contends the trial court prejudicially erred in denying his motion to vacate his guilty plea because trial counsel failed to adequately advise him of the specific immigration consequences and did not pursue an immigration-safe plea. He further asserts that he was prejudiced by counsel's failure to advise him that he would be deported by pleading guilty to the charges.

A. *Legal Standard*

Defendant's convictions for inflicting injury on a domestic partner resulting in a traumatic condition with a prior conviction (§ 273.5, subd. (f)(1)) and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)) made him subject to removal and exclusion from the United States under federal immigration law. (See 8 U.S.C. § 1227(a)(2)(A)(iii); *Lee v. U.S.* (2017) 582 U.S. 357, 361-362; *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1174; *People v. Villalba* (2023) 89 Cal.App.5th 659, 667; *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 903.) Effective January 1, 2017, the

7

Legislature adopted section 1473.7, which provides in pertinent part that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" that is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).) The statute further provides that a court "shall" vacate a conviction or sentence upon a showing, by a preponderance of the evidence, of prejudicial error. (*Id.*, subd. (e)(1).) The focus of the inquiry is on the "defendant's own error in . . . not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States." (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1009 (*Camacho*).)

B. *Standard of Review*

In *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*), our Supreme Court held that a party seeking relief under section 1473.7 must satisfy a two-part test. "The defendant must first show that he did not meaningfully understand the immigration consequences of his plea." (*Espinoza*, at p. 319.) If he establishes that lack of understanding, the defendant must then show his misunderstanding constituted prejudicial error, which "'means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.'" (*Ibid.*; quoting *People v. Vivar* (2021) 11 Cal.5th 510, 529 (*Vivar*).) Defendant's decision to plead guilty is "'"viewed at the time of the offer . . . ."'" (*People v. Martinez* (2013) 57 Cal.4th 555, 564 (*Martinez*).)

8

We independently review whether defendant proved, by a preponderance of the evidence, that he did not understand the immigration consequences of his plea to violating sections 273.5, subdivision (f)(1) and 245, subdivision (a)(4). (*Espinoza*, *supra*, 14 Cal.5th at p. 319.) If we find he proved lack of understanding, we then independently review whether his lack of understanding constituted prejudicial error. (*Id.* at p. 321.) "When courts engage in independent review, they should be mindful that '"[i]ndependent review is *not* the equivalent of de novo review . . . ."' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations." (*Vivar*, *supra*, 11 Cal.5th at p. 527.) Instead, "[w]hen courts engage in independent review, they must give deference to the trial court's factual determinations if they are based on '"'the credibility of witnesses the [trial court] heard and observed.'"'" (*Espinoza*, at p. 320; *Vivar*, at pp. 527-528.) "But when the trial court's findings 'derive entirely from written declarations and other documents,' the trial court and the reviewing court '"are in the same position,"' and no deference is owed." (*Espinoza*, at p. 320.) Here, there was no testimony from either defendant or his trial counsel, but entirely from defendant's written self-serving declaration, plea form, immigration addendum form, plea hearing, and other documents.

C. *Analysis*

Defendant primarily based his section 1473.7 motion on the asserted errors of his court-appointed counsel. Defendant has failed to prove by a preponderance of the evidence that defense counsel committed an error that damaged his ability to understand,

9

defend against, or knowingly accept the immigration consequences of his conviction. The main evidence defendant relies on to support his claim is his declaration, which was uncorroborated, self-serving, and not credible.

Addressing defendant's declaration, we note that he omits any reference to the separate immigration consequences addendum he had signed. The addendum stated that a conviction of an aggravated felony under federal law "*will* result in removal/deportation, exclusion, and/or denial of naturalization." The form defined aggravated felony to include a crime of violence if the term of imprisonment is at least one year, a crime of moral turpitude, and a domestic violence offense. Defendant did not require a Spanish interpreter and this was not his first criminal action. In addition, defendant admitted in his declaration that he had discussed his immigration status with his appointed counsel before his plea and understood that any conviction might lead to deportation. Defense counsel certified that he believed defendant had an adequate opportunity to discuss the case with him and understood the consequences of the plea, and counsel joined in his decision to plead guilty. A defendant cannot be told that his plea will lead to removal, confirm on the record that he understood that consequence, present no contrary evidence from his defense attorney, and then credibly claim years later that he did not understand that he would be removed. (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 666 (*Abdelsalam*).)

Furthermore, defendant's claim in his declaration that he did not understand the immigration consequences of the plea was not credible and uncorroborated. The record

contradicts his assertion that he had not "truly understood" the adverse immigration consequences of his pleas. (Evid. Code, § 780, subd. (i); *People v. Hawthorne* (2009) 46 Cal.4th 67, 100 [evidence tending to contradict witness's testimony is relevant for impeachment], overruled on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 637.) The unambiguous language in the immigration consequences addendum contradicts defendant's assertion that he never knew that being convicted of an aggravated felony would affect his immigration status. Additionally, at sentencing, Jane Doe gave a victim impact statement noting that the criminal charges prevented defendant's grandsons from getting to know him "and now he's going to be deported[.]" She again referenced deportation, stating, "It's best that he's deported." If defendant did not know or "truly" understand that his conviction would cause his deportation, then once he heard the victim's statement, he should have asked to continue the sentencing hearing so he could get clarification from defense counsel. The record shows that defendant knew the immigration consequences of his conviction and accepted them. Defendant's version of his discussions with his appointed counsel prior to pleading guilty is at odds with the record.

Defendant's declaration does not establish, by a preponderance of the evidence, that defense counsel did not adequately advise defendant of the adverse immigration consequences of pleading guilty to the charges, or that he was advised but did not understand the warnings given him. Defendant did not present any statements, sworn or unsworn, from defense counsel to corroborate his declaration. (*Abdelsalam*, *supra*, 73

11

Cal.App.5th at 664; see *Vivar*, *supra*, 11 Cal.5th at p. 519 [the defendant provided defense counsel's "unsworn e-mail correspondence" with postconviction counsel "and her handwritten notes" that she did not "advise him as to the actual immigration consequences of a plea to the . . . charge or any other plea"]; *Camacho*, *supra*, 32 Cal.App.5th at p. 1009.) A defendant can easily claim his attorney erred. (*In re Alvernaz* (1992) 2 Cal.4th 924, 938.) Defendant's assertions that defense counsel never advised him or misadvised him about the immigration consequences of the open plea is "meaningless unless there is objective corroborating evidence supporting appellant's claimed failures." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 224, superseded by statute on other grounds as stated in *People v. Carrillo* (2024) 101 Cal.App.5th 1, 26.) Defendant's claim rested primarily on his self-serving statements, and self-serving statements generally lack trustworthiness. (*Ibid.*; *People v. Duarte* (2000) 24 Cal.4th 603, 611.) Defendant also did not examine his appointed counsel at the hearing, and there is no evidence to suggest counsel was deceased, unavailable or unwilling to testify or sign a declaration. (See *Espinoza*, *supra*, 14 Cal.5th at p. 325 [during motion hearing parties informed the trial court "they tried, without success, to contact the attorney who represented Espinoza at the time his plea was entered"].)

Defendant claims his mental health issues established error. We disagree. Defendant asserted in his declaration that he had a history of mental health issues and, as of 2022, had been treated for schizophrenia, generalized anxiety disorder, and major depressive disorder. However, defendant did not explain that he had experienced those

issues when he discussed the immigration consequences with his defense attorney, when he signed the change of plea form and addendum, during the change of plea colloquy, or during sentencing. He also did not explain how those mental health issues damaged his ability to understand and accept the immigration consequences of his plea. Moreover, two years after defendant's conviction, an immigration court found he was mentally competent to proceed with removal proceedings. Defendant has not shown he was given inaccurate advice from counsel. There is no suggestion in the record that anyone ever said anything to defendant to suggest that having legal permanent resident status meant he could ignore or disregard the immigration consequences explained to him both by his counsel and by the court or the immigration addendum form he signed. Rather, the record shows that defendant was adequately advised about the adverse immigration consequences of his plea. Nothing in the record undermines the court's findings on this issue. We afford them the deference to which they are entitled. (*Espinoza*, *supra*, 14 Cal.5th at p. 320; *Vivar*, *supra*, 11 Cal.5th at pp. 527-528.)

Based on the foregoing, we agree with the trial court that defendant received specific and proper immigration advisements prior to entering his guilty pleas. As such, we need not examine whether defendant was prejudiced by the denial of his section 1473.7 motion to vacate.

## IV.

## DISPOSITION

The order denying defendant's motion for relief under section 1473.7 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____

J.

We concur:


RAMIREZ _____

        P. J.


MILLER _____

        J.